IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FERRARA CANDY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN LICORICE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Ferrara Candy Company ("Ferrara"), by its attorneys, Fox, Swibel, Levin & Carroll, LLP, complains against defendant American Licorice Company ("American") as follows:

### Parties

1. Ferrara is an Illinois corporation with its principal place of business in Oak Brook Terrace, Illinois. Ferrara is a 100 year old privately owned manufacturer of iconic candy brands such as Brach's, Black Forest, Trolli, Lemonhead, Super Bubble, Sathers, Fruit Stripe, Red Hots, Atomic Fireball and Boston Baked Beans.

2. American is a Delaware corporation with its principal places of business in LaPorte, Indiana. American is a candy maker producing, among other products, a red licorice product known as Red Vines.

### Jurisdiction and Venue

3. Pursuant to 28 U.S.C. § 1332(a), jurisdiction is proper because: (a) the amount in controversy exceeds $75,000.00; and (b) there is complete diversity between the parties.

1

4. This court has personal jurisdiction over American because, for purpose of the matters in controversy here, American has expressly agreed with Ferrara to submit to the jurisdiction of state and federal courts in Cook County, Illinois.

5. This court also has personal jurisdiction over American because American is qualified to do business in Illinois and purposefully and knowingly transacts business here.

6. Pursuant to 28 U.S.C. § 1391(b), venue in this Court is proper because: (a) American has expressly agreed to this forum and, separately, (b) a substantial part of the events giving rise to the claims in issue occurred within the judicial district of the U.S. District Court for the Northern District of Illinois

### Summary of Claims

7. By this action Ferrara seeks damages which it has suffered as a result of (a) contaminated candy product which American sold to Ferrara and, separately, (b) defective packaging of that product but for which there would not have been contamination.

8. Ferrara's product offerings include variety bags called Kiddie Mix which contain Ferrara candies such as Lemonheads and Trolli as well as branded candies Ferrara purchases from other manufacturers for inclusion in the bags. In 2014 and early 2015 Ferrara purchased from American a red licorice candy called Red Vines for inclusion in the Kiddie Mix bags.

9. On information and belief, the Red Vines American sold and delivered to Ferrara were infested with rice weevils *(Sitophilus oryzae)*, insects that feed on grains such as wheat which is an ingredient of Red Vines. These insects rendered the Red Vines and the Kiddie Mix bags containing them unfit for the purpose intended, unmerchantable, adulterated and unwholesome.

10. Moreover, the packaging in which American delivered the Red Vines was defective such that the rice weevils, attracted by the grain based smell emanating from the defective openings, entered and contaminated the candy packets.

11. To mitigate its damages, Ferrara stopped production of Kiddie Mix, quarantined its inventories both of finished Kiddie Mix product containing Red Vines and of bulk Red Vines not yet packed into Kiddie Mix bags and, to prevent further spread of the infestation, ultimately disposed of most unused bulk Red Vines. In addition, Ferrara permanently halted distribution of all finished Kiddie Mix with Red Vines and, mindful of consumer complaints of infested Red Vines in already shipped Kiddie Mix, initiated a market withdrawal of already distributed Kiddie Mix.

12. Ferrara has and will continue to incur significant damages currently approaching $1,800,000 due to the rice weevil infestation and defective packaging.

## Factual Background

**A.   Ferrara purchases Red Vines from American**

13. In 2014, Ferrara ordered and American delivered to Ferrara F.O.B. approximately 37,800 cases of Red Vines (the "2014 Red Vines"). 35,100 cases were delivered to Ferrara's warehouse in Itasca, Illinois and 2,700 cases to Ferrara's Bolingbrook, Illinois distribution facility. Copies of the purchase orders for the 2014 Red Vines are attached as Group Exhibit 1.

14. In 2015, Ferrara ordered and American delivered to Ferrara F.O.B. approximately 5,400 cases of Red Vines to Ferrara's Bolingbrook distribution center (the "2015 Red Vines"). Copies of the purchase orders are attached as Group Exhibit 2.

15. The deliveries of bulk Red Vines came on shrink wrapped pallets of cardboard cases. Each case contained approximately 275 individually sealed packets of Red Vines.

3

B.    **The Terms and Conditions of the Parties' Contract**

16.    The sale of the Red Vines product by American to Ferrara were made pursuant to Ferrara's standard purchase order which expressly incorporates terms and conditions ("Terms") viewable on a website whose address was displayed in bold on the face of each purchase order. A copy of the contract Terms is attached as Exhibit 3.

17.    In pertinent part the Terms provide:

(a)    American's acceptance is limited to the provisions set forth in the Terms and delivery by American constitutes acceptance:

> This Order expressly limits acceptance to the terms stated herein. Any additional or different terms proposed by Seller [American] are objected to and rejected; however, such proposals shall not operate as a rejection of this Order, even if Seller purports to condition its acceptance of this Order on Buyer's [Ferrara] agreement to such additional or different terms. The manufacture or delivery of goods or the performance of services described on the face hereof will constitute an acceptance by Seller of this Order and all terms and conditions contained herein. (Terms § 2.)

(b)    Title to the Red Vines and "all risk of loss during shipment" are on American irrespective of F.O.B. point or other terms. (Terms § 1.)

(c)    American expressly warranted the Red Vines would be free of any defects in design, materials and workmanship, be fit for purposes intended, be of merchantable quality, be wholesome and fit for human consumption, be free from contamination and adulteration, and have no packaging defects. (Terms § 5.)

(d)    American's express warranties are in addition to all other warranties, express, implied or statutory. (Terms § 5.)

(e)    Illinois law governs construction, interpretation or performance of the purchase order; actions arising out of the purchase order shall be instituted in the state or federal courts

sitting in Cook County, Illinois; and American submitted to jurisdiction in those courts and waived objection to venue there. (Terms § 7.)

(f) American also agreed to defend and indemnify Ferrara against all liabilities, claims, losses, expenses (including reasonable attorneys' fees), or demands arising out of or in connection with American's breach of its representations or warranties or damage to Ferrara's property. (Terms § 15.)

### C. Ferrara Discovers Rice Weevils in American's Red Vines

18. Rice weevils, whose scientific name is *Sitophilus oryzae,* are insects that destroy grain products. They favor stored grain such as corn and wheat. Rice weevils have chewing mouthparts at the end of their snouts which enable them to penetrate hardened surfaces. The female rice weevil bores a hole and lays its eggs into grain products.

19. Rice weevils develop in stages – larval, pupal and finally adult. Once the larvae hatch, they eat and damage the surrounding grain products, such as the Red Vines sold by American to Ferrara.

20. Prior to March 16, 2015, Ferrara had no known history of rice weevil presence in any product it manufactured or in any facility in which it packed or warehoused its own products or products (including products with wheat as an ingredient) it purchased from others.

21. In 2014 and early 2015, Kiddie Mix bags were packed at Ferrara's facility in Bellwood, Illinois. Starting on March 11, 2015, Ferrara shifted all of its Kiddie Mix packing to its facility in Bolingbrook, Illinois.

22. On March 16, 2015, a Ferrara packer at the Bolingbrook facility observed rice weevils on the metal plate underneath an infeed conveyor belt being employed for the packing of

5

Kiddie Mix bags. After this observation, Ferrara ceased packing Kiddie Mix and segregated finished Kiddie Mix packed that day to a designated area.

23. The next day, March 17, 2015, Ferrara quality control team members and other company personnel investigated the situation. Among other things they examined unopened bulk cases of Red Vines staged near the Kiddie Mix packing line where the rice weevils had been discovered. The inspection found rice weevils in those cases. Additional inspection that day of bulk Red Vine cases revealed still further rice weevil infestation.

24. Ferrara also examined finished Kiddie Mix bags and found evidence of rice weevils in Red Vines packets that had been placed into the finished Kiddie Mix.

25. In April 2015, Gene White, a board certified entomologist employed by Rentolkil/Presto-X, regular pest control managers for Ferrara facilities, examined samples of the insects infesting Red Vine packets in the bulk cases and in finished Kiddie Mix bags.

26. White found evidence of multigenerational presence of rice weevils. For example, a sample packet with lot code 4E20RR10000 contained live adult bugs, live pupa and active larva inside the same Red Vine packet indicating that the rice weevils were using the licorice as a breeding medium and suggesting possibly three generations of the insect were living in the packet. Pictures reflecting the results of White's examination are attached as Group Exhibit 4.

27. On information and belief, American, either during its manufacture and packaging of the Red Vines or during the transportation of the Red Vines by its carriers to Ferrara, was the original source of the infestation.

**D.   Ferrara notifies American of the Infestation and Mitigates its Damages**

28. By email on the afternoon of March 17, 2015, Ferrara notified American of the

infestation. Later the same day, an American representative advised that the infestation likely came during transport of the Red Vines to Ferrara and claimed that American had no responsibility for the contaminated product it sold to Ferrara. However, the Terms allocate to American "all risk of loss during shipment" for the Red Vines sold to Ferrara. (Terms § 1.)

29. On March 25, 2015, Ferrara and American personnel discussed the rice weevil infestation of the Red Vines in a conference call. During the call, Ferrara requested that American provide relevant information, including information about a beetle infestation American said had occurred in its facility at LaPorte, Indiana in 2014. American continued to deny liability and refused to provide the requested information about its previous insect infestation.

30. Following initial discovery of the rice weevils, Ferrara explored how best to remediate and prevent further infestation of its products and facilities and to mitigate its damages. To that end, Ferrara:

(a) By the end of March 2015, removed and destroyed virtually all of its inventory of bulk 2014 Red Vines not already incorporated into finished Kiddie Mix.

(b) By the end of March 2015, removed from its facilities its inventory of bulk 2015 Red Vines not already incorporated into finished Kiddie Mix. That inventory remains in refrigerated trailers at Ferrara's Bolingbrook, Illinois facility.

(c) Removed from its facilities the entire inventory of finished Kiddie Mix containing Red Vines. It placed the part of the inventory located at its Bolingbrook facility in refrigerated trailers there and at its Itasca, Illinois facility, and the part of the inventory located at Ferrara's distribution center in Grand Prairie, Texas in trailers at that location.

(d) Deployed at its Itasca, Bellwood and Bolingbrook facilities, kairomone traps designed to attract and capture rice weevils. To date no rice weevils have been found in those traps.

31. On March 27 and 31, 2015, Ferrara received consumer complaints about infested Red Vine packets in Kiddie Mix.

32. Based on the consumer complaints and its internal investigations, Ferrara determined that the rice weevil infestation was jeopardizing Ferrara's brands and its relationship with its retail customers and consumers.

33. Ferrara permanently stopped distribution of finished Kiddie Mix containing Red Vines to customers by the end of March and, on April 2, 2015, initiated a Kiddie Mix market withdrawal directed to retail customers who likely had not already exhausted their stock of finished Kiddie Mix.

**E.  Rice Weevil Infestation Was Caused by American's Defective Packaging**

34. Ferrara's investigation also found:

(a) The seals of the Kiddie Mix bags were intact and without indication that rice weevils had attempted to compromise the packaging by drilling in or out;

(b) Of all candies in the bags, only Red Vine packets were infested. Cow Tales, the only other wheat-based candy in the bags, was not infested and its packaging exhibited no scratches or other sign that rice weevils had attempted to enter them;

(c) Every infested Red Vine packet had a defective seal or cut in its packaging; and

(d) No Red Vine packet with a good seal was infested or showed evidence of scratching or other effort by rice weevils to enter them even when found in a Kiddie Mix bag containing infested Red Vine packets.

8

35. The rice weevils were attracted to the Red Vines by the grain base odor of the licorice emanating from the defective packaging and were not attracted to the licorice when proper packaging prevented that emanation.

36. But for the defective packaging, the Red Vine infestation would not have occurred, regardless of its original source.

### F. American's actions have damaged Ferrara

37. Ferrara has suffered significant damages as a result of and proximately caused by American's provision of infested Red Vines and use of defective packaging.

38. These damages, which continue to accrue, currently approach $1,800,000 and include:

   (a) product and product related costs;

   (b) costs for retailer withdrawal of contaminated products;

   (c) lost profits;

   (d) labor costs;

   (e) trailer storage rental costs for preservation of product;

   (f) laboratory testing and expert expenses; and

   (g) product disposal costs.

39. American is also liable for Ferrara's attorneys' fees under Section 15 of the Terms.

### G. Ferrara Has Performed its Contractual Obligations and American Has Refused to Reimburse Ferrara for its Damages.

40. On July 27, 2015, Ferrara sent written notice to American summarizing the rice weevil issues that had previously been raised with American in emails and conference calls. The July 27, 2015 letter also demanded that American compensate Ferrara for its damages caused by

9

the rice weevil infestation consistent with American's obligations under the Terms. A copy of the July 27, 2015 letter is attached as Exhibit 5.

41. American has rejected Ferrara's demand for compensation in accordance with the Terms.

42. Ferrara has also performed or been excused from performing all of its obligations under the purchase orders and the Terms.

### Count I – Breach of Express Warranty
### (Regarding Freedom of Packaging from Defect)

43. Ferrara incorporates by reference the allegations in paragraphs 1-42.

44. Section 5(a) of the Terms provides:

**Seller warrants that for the period of one year** or such other period specified on the face of this Order following acceptance that **the goods shall (a)(1) be free of any defects in design, materials, and workmanship**, and shall conform and perform in accordance with the description, specifications, and sample of this Order whether furnished by Seller or specified by Buyer; (ii) be fit for the purposes intended; (iii) be of merchantable quality; (iv) not be adulterated or misbranded; and, (v) be free of any liens and encumbrances. (emphasis added).

45. In breach of American's warranty in Section 5(a)(i) of the Terms, the Red Vine packaging had defects in its "design, materials, and workmanship."

46. Defective seals in the packaging permitted the grain based odor of the licorice to attract rice weevils and to enter the package and infest the licorice.

47. As set forth above, Ferrara has been materially damaged as a proximate result of this breach of warranty.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

### Count II – Breach of Express Warranty
### (Regarding Fitness for Intended Purpose)

48. Ferrara incorporates by reference the allegations in paragraphs 1-42.

49. Section 5(a) of the Terms provides:

**Seller warrants that for the period of one year** or such other period specified on the face of this Order following acceptance that **the goods shall** (a)(1) be free of any defects in design, materials, and workmanship, and shall conform and perform in accordance with the description, specifications, and sample of this Order whether furnished by Seller or specified by Buyer; (ii) **be fit for the purposes intended**; (iii) be of merchantable quality; (iv) not be adulterated or misbranded; and, (v) be free of any liens and encumbrances. (emphasis added).

50. In breach of American's warranty in Section 5(a)(ii) of the Terms, the Red Vines were not "fit for the purposes intended."

51. The Red Vines were intended to be sold as part of Ferrara's Kiddie Mix product and eaten by the consumers free from insect infestation.

52. Because the Red Vines were infested with rice weevils, Ferrara could not use them for their intended purpose.

53. As set forth above, Ferrara has been materially damaged as a proximate result of American's breach of the Section 5(a)(ii) warranty.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

### Count III – Breach of Express Warranty
### (Regarding Merchantability)

54. Ferrara incorporates by reference the allegations in paragraphs 1-42.

55. Section 5(a) of the Terms provides:

**Seller warrants that for the period of one year** or such other period specified on the face of this Order following acceptance that **the goods shall** (a)(1) be free of any defects in design, materials, and workmanship, and shall conform and perform in accordance with the description, specifications, and sample of this Order whether furnished by Seller or specified by Buyer; (ii) be fit for the purposes intended; (iii) **be of merchantable quality**; (iv) not be adulterated or misbranded; and, (v) be free of any liens and encumbrances. (emphasis added).

56. In breach of American's warranty in Section 5(a)(iii) of the Terms, the Red Vines were not "of merchantable quality."

57. Candy infested with rice weevils is not suitable for sale to retail customers or end-consumers who intend to eat the candy.

58. As set forth above, Ferrara has been materially damaged as a proximate result of American's breach of the Section 5(a)(iii) warranty.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

### Count IV – Breach of Express Warranty
### (Regarding Adulteration)

59. Ferrara incorporates by reference the allegations in paragraphs 1-42.

60. Section 5(a) of the Terms provides:

**Seller warrants that for the period of one year** or such other period specified on the face of this Order following acceptance that **the goods shall** (a)(1) be free of any defects in design, materials, and workmanship, and shall conform and perform in accordance with the description, specifications, and sample of this Order whether furnished by Seller or specified by Buyer; (ii) be fit for the purposes intended; (iii) be of merchantable quality; (iv) **not be adulterated** or misbranded; and, (v) be free of any liens and encumbrances. (emphasis added).

61. In breach of American's warranty in Section 5(a)(iv) of the Terms, the Red Vines were "adulterated" by virtue of the rice weevil infestation.

62. As set forth above, Ferrara has been materially damaged as a proximate result of American's breach of the Section 5(a)(iv) warranty.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

### Count V – Breach of Express Warranty
### (Regarding Wholesomeness and Fitness for Human Consumption)

63. Ferrara incorporates by reference the allegations in paragraphs 1-42.

64. Section 5(b) of the Terms provides:

**In the case of goods which are food**, drugs, devices or cosmetics, or are to be used in or as packaging or labeling for such goods, or in Buyer's edible products, **Seller expressly warrants that the goods are wholesome and fit for human consumption** or fit for contact with food or edible products, and are not adulterated or misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act, or under any other applicable law or regulation, are not articles which may not under Sections 404 or 405 of said Act be introduced into interstate commerce, and are manufactured in a facility or under conditions which are **free of contamination, microbiological or otherwise**, which undermines the merchantability of the goods or places such goods in noncompliance with any law, rule, or regulation. (emphasis added).

65. Red Vines are food products. In breach of American's warranty in Section 5(b), the Red Vines were food products that were not "wholesome and fit for human consumption."

66. Rice weevil infested licorice is neither a wholesome food nor fit for humans to consume.

67. As set forth above, Ferrara has been materially damaged as a proximate result of American's breach of the Section 5(b) warranty.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an

13

amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

### Count VI – Breach of Express Warranty
### (Regarding Packaging)

68. Ferrara incorporates by reference the allegations in paragraphs 1-42.

69. Section 5(c) of the Terms provides:

**Seller warrants that with regard to any packaging materials** used in the packaging of the goods or any goods intended to be used in packing Buyer's products such materials or goods are, or will be when used, **incapable of causing hazard to health** or any significant taint of taste or **microbiological or other contamination which undermines the merchantability of the goods**. (emphasis added).

70. In breach of American's warranty contained in Section 5(c), the packaging material in which American packaged the Red Vines was not "incapable of causing . . . contamination which undermines the merchantability of the goods."

71. To the contrary, the packaging was defective so as to permit emanation of the Red Vines grain base odor from the inside of the packaging and attract rice weevils whose presence in the licorice package and in the licorice itself made the Red Vines unmerchantable.

72. As set forth above, Ferrara has been materially damaged as a proximate result of American's breach of the Section 5(c) warranty.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

### Count VII – Breach of Implied Warranty
### (Regarding Merchantability)

73. Ferrara incorporates by reference the allegations in paragraphs 1-42.

74. Under 810 ILCS 5/2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

75. American is a merchant with respect to the sale of Red Vines.

76. American breached this implied warranty of merchantability by providing infested licorice and defective packaging.

77. As set forth above, Ferrara has been materially damaged as a proximate result of American's breach of the Illinois statutory implied warranty of merchantability.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

### Count VIII – Breach of Implied Warranty
### (Regarding Fitness for Intended Purpose)

78. Ferrara incorporates by reference the allegations in paragraphs 1-42.

79. Under 810 ILCS 5/2-315, where the seller "has reason to know any particular purpose for which the goods are required…there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

80. American knew that Ferrara intended to sell the Red Vines to retailers and consumers for human consumption.

81. The Red Vines American sold to Ferrara were infested with rice weevils and not fit for this intended purpose.

82. As set forth above, Ferrara has been materially damaged as a proximate result of American's breach of the Illinois statutory implied warranty of fitness for a particular purpose.

WHEREFORE, Ferrara requests the Court to enter judgment in its favor and against American (a) for all direct, incidental, and consequential damages as set forth above and in an amount to be proven at trial (in excess of $75,000); (b) for Ferrara's reasonable attorneys' fees, costs and related legal expenses; (c) for such other relief as the Court deems just and proper.

                                            **FERRARA CANDY COMPANY**

                                            By: /s/Martin B. Carroll
                                                 One of its Attorneys

Martin B. Carroll (#6200977)
Adam A. Hachikian (#6283021)
**Fox, Swibel, Levin & Carroll, LLP**
200 W. Madison St., Suite 3000
Chicago, IL 60606
(312) 224-1200

Dated: August 31, 2015